Good morning, Your Honors. May it please the Court. My name is Farley Katz and I'm appearing here on behalf of Wade Shang. This is a criminal tax case in which the defendant was charged with tax evasion for five consecutive years. The IRS attempted to prove its case using the net worth method of proof. This indirect method of calculating taxable income is a method that the courts have recognized is so fraught with danger that the Supreme Court has held that the courts must closely scrutinize its use. For example, if you omit a single substantial asset or liability from the computation, you can produce a completely incorrect result. You can produce phantom income when, in fact, there is none. The Supreme Court set forth several prerequisites for the use of this method, most important of which, I think, is that the government must establish the net worth at the beginning of each of the years in issue with reasonable certainty. And they use the word certainty, which is a high standard. It's reasonable certainty, but it is certainty is the government's obligation before it can use this method. All right. And on that point, what is it about the 1999 opening net worth that wasn't reasonably certain? Well, several things. There were mistakes in the ad. There were loans that were not discovered that reduced the ad. That occurred during 1999, yes? I believe that. And came out as incorrect adjustments or overstatements of assets or undervaluation of 1999 liabilities. That's right. The loans are in the end of 1999, so the closing net worth is incorrect on that. It's shown to be incorrect. But the opening net worth in 1999, what is it about the opening net worth in 1999 that wasn't reasonably certain? Well, Your Honor, the IRS did two computations. They did one computation including trust funds, and they did one computation excluding trust funds. Correct. And that was both before the jury. Both before the jury. And the jury made its decision under proper instructions. That's correct. Okay. Apart from that, what is it about the opening net worth that wasn't reasonably certain? And both of those computations for 1999 show a positive opening net worth. The problem here is that you need to look at the whole methodology. The IRS used a uniform methodology for these five years. That's fine, but what is it about the opening net worth that wasn't reasonably certain? The methodology they used, if you remove the trust accounts and if you correct the errors that they admit they made. But look, let me – I think you understand my question. I do, Your Honor. And I want to understand that because you are not answering it, your answer is there isn't any. No, Your Honor. Apart from the trust situation. No, Your Honor. I do have an answer, and the answer is this. Okay. The methodology they used, if you remove the trust accounts and correct for the errors that they admit they made. But the errors – here's the question. The question is opening net worth. The errors go to overstate – go to undervaluation of liabilities in 1999, an understatement of assets, right? Yes, Your Honor. That's correct. And there are adjustments to that opening net worth figure. That's correct. So my question goes back to the opening net worth figure itself. Well, Your Honor, I have to answer by – in this fashion. If you remove the trust accounts and if you correct the errors that were made. All right. you produce a situation where, according to the IRS, in the first year there is an over-reporting of income. And in the third year there is an over-reporting of income. There is no reason to believe that the defendant over-reported his income in those years. There is no reason to believe by the same token that he under-reported his income in the later years. This methodology produces results that are inherently suspect. Let me ask the question from the other end. Assuming – I'm not asking you to concede – but assuming the opening net worth for 1999 is correct or is reasonably certain, if there is a problem with the closing net worth, does that throw the equation off? If the closing net worth is – if the closing net worth is overstated, that would result in an incorrect conclusion that there was under-reported income. So is there a – for the purpose of this Court assessing the reasonable certainty of the calculations used for 1999, does it make a difference, a quantitative difference, whether the problem is with opening or closing net worth? I don't believe so. It may not make a quantitative difference, but it makes a legal difference, because Holland says that the reasonable certainty has to attach to the opening net worth balance. Isn't that correct? Yes, Your Honor, but it also applies to the closing net worth. The question about the accuracy of the closing net worth or the ultimate amount of under- or overstated income would simply be a matter of substantial evidence, right? I disagree. I think the closing net worth has the same standards as the opening net worth. But that would be true for 2000, which isn't an issue. Well, in order to determine whether income was omitted in 1999, you need to establish both the opening net worth and the closing net worth, and I think the same legal standards should apply to those. Let me ask this question, and forgive my math. It is not, I promise you, it's not my strong suit. If you give your client every benefit of the doubt in 1991 and start with the figure of $61,000 of unreported income and give full credit for the credit line and the checks that were negotiated but didn't get processed by the bank or cleared by the bank until apparently after the first year in 2000, you come up with about $45,000, $46,000. It still leaves $20,000 or so in unreported income. Couldn't a reasonable fact finder look at that and conclude that there was substantial unreported income in the year 1999? One could if the government had done a complete investigation. The government needs to do a thorough investigation. They did not do a thorough investigation for many reasons, and that's why the opening net worth in each of the years is suspect. The government knew that the defendant had business assets in Texas. They're shown on its tax return. They knew he had a law practice in Texas. They sent no one to Texas to investigate whether or not, and believe me, there are IRS agents in Texas. I deal with them every day. They sent no one over there to investigate his assets and liabilities in Texas. The IRS manual says that they must do, to have a thorough investigation, which they did not do here, that they must do a canvas of banks. Canvas of banks just means sending a $0.37 postage prepaid letter to all the banks in the areas where you live and work. They didn't do that. They've never given explanation as to why. These are some of the reasons why the opening net worth for each of the years, including 1999, has not been proven with reasonable certainty. They didn't get all defendants' checks. They decided we're going to save some money. We're going to only ask the bank to give us copies of checks of $500 or more because they figured, well, if you have a credit card account, you're going to be paying those off with checks of $500 or more. Well, that's obviously not true. So they didn't find his checks. They didn't analyze his trust account. They didn't analyze his trust account at all to see what's going in there and what's coming out.  Ms. Davis. May it please the Court. My name is Gregory Davis. I represent the United States. The defendant didn't even address the 1998 tax year in which there were no problems with the closing net worth or the opening net worth. That's a substantial tax loss for the – that's count four of the indictment  That's count five of the indictment. Five, you look at U.S. v. Keller, which says that even if there is an error, a guilty verdict can be affirmed if there's a substantial overstatement even after adjusting for the errors or purported errors. Now, we can see that there were errors in the 1999 tax year. There was the $36,000 in the credit line that we didn't discover because the – was it – Hedlund's Greenpoint Mortgage, when asked to provide records, provided the IRS with an October 5th statement, not a December 31st statement. Why that is, we don't know. There's nothing in the record. But even when you account for that and you account for the checks that didn't clear until February or March of 2000, you still have a substantial understatement of, I believe it was, 19 – let's see, $44,936.27 in unreported income for 1999. That's substantial. A reasonable trier of fact could conclude that that's a substantial understatement and conclude that the government has met its burden of establishing, beyond a reasonable doubt, the elements of tax evasion. Is there a difference in terms of our review between making a determination about whether a reasonable fact finder, even after allowing for these things that were missed, could conclude that there was substantial unreported income? That's – let's call that Inquiry A. Okay. And Inquiry B, our legal obligation to ensure that where the government chooses to use the net worth method of proof, that the method they've employed was accurate, was reasonably certain, if you will, are those distinct inquiries? I don't know that we have to answer that. I think it's possible that they conflate and that the two – that they interact so closely that you have to look at – you can't look at one without the other. But I think even if they do conflate, we – the government was still sufficient in its presentation of evidence for the fact finder to conclude that there was a substantial understatement, and also the government's investigation was quite substantial. I mean, Agent Lee looked at the defendant's tax returns. She looked at the various schedules attached to the tax returns. She looked at the W-2s. She traced bank accounts. She looked at various other assets that he had. She discovered, what was it, 14 of the 16 bank accounts. Remember, the defendant didn't help us at all here. We had to go to various third parties to obtain information. It's difficult to accuse the government of conducting a bad investigation where the Bank of America doesn't provide us with checks. The defendant received checks – he received the checks from his bank account. He could have provided that to us. We went to the Bank of America and said, please give us deposit records. They didn't give us this. It's very hard to blame the government for a third party. The government put in front of the jury, again focusing on 1999, two different methods of calculating unreported income. One included the amounts that were in the trust account. Correct. And one excluded it. And I think the numbers were roughly, with it in, it's 117,000. With this out, it's about 60,000, right? I believe that's correct. Why did the government do that? Why did it lay out both? We laid out both because there was testimony from the representative of the California State Bar from which a finder of facts could conclude that an attorney is supposed to – the attorney is supposed to transfer those funds out into the attorney's own account. Here, the testimony from most of the defendants' clients was that he paid them right away and the money didn't seem to go anywhere. It was fairly certain that after that was over, a reasonable finder of facts could conclude that he was treating this as his own income. It was one of the reasons the government chose to lay it out in this two-fold manner, that they did not audit actual transactions in and out of the trust account. I don't know. I don't believe there's anything in the record to indicate why the government – why the IRS. Well, let me ask – let me flip it over. Did the agents, did the government conduct an audit of the in and out of the defendants' trust accounts? I don't know. All I can tell you – I mean, Agent Lee testified that she reviewed the checks that went into the accounts. We don't – I'm not sure that it's clear from the record which particular accounts she reviewed. But I think you can conclude that she looked at all of the accounts. She was certainly looking at lots of checks going various places. The reason I ask is because if it's correct that the actual unreported income before deductions for 99 is $117,000, then a $45,000 deduction is a smaller percentage. But if you – if you look at 61,000, 40,000 becomes a much larger percentage, does it not? It does percentage-wise, but it's still $21,000 in unreported income. I understand that. Which is still substantial. I mean, another reason that I think the government looked at these as – the trust accounts as belonging to the defendant, he listed them on various loan applications as assets belonging to him. So I think a reasonable finder of facts could conclude that he was treating these as his own income, and therefore it was proper for us to present that to the jury, which apparently rejected it. I mean, based on what they did in the first and third counts, they concluded that the trust accounts were separate and didn't consider them. Sometimes personal injury lawyers leave money in trust accounts to pay off advances that have been made during the course of the representation for investigators, for exhibits, for depositions, for medical reports and that sort of thing. Did the government conduct any inquiry to determine whether that was the case with respect to 99? We did not, particularly – especially because the defendant didn't list any of these as liabilities on any loan applications or on other things. He didn't claim that these were amounts that he had expended. You had one of the government witnesses testify that he received a $200 advance. One out of – I don't remember how many government witnesses there were, 14 or 15. That's simply not – the government only has to pursue reasonable leads. We aren't required to conduct a Magellan-like expedition, as this Court held in Hamilton. The government's investigation was reasonable. And even after you take out the problems with various funds,  is it possible to look at what the jury did with respect to the acquitted counts and come to any other conclusion but that they gave the defendant the benefit of the doubt and used the lower figure in those years, that is, without the trust account? It would certainly be difficult to explain an acquittal on Count 1 were it not that the jury was rejecting the government's position that the trust account should be included, because if it was something like $170,000 without the trust accounts of unreported income, it's difficult to believe that the jury would have acquitted on that and convicted on Counts 2, 4, and 5 if they had indeed concluded that the trust accounts should be included. If the Court has no further questions. Thank you. Thank you very much. Mr. Katz? Thank you, Your Honor. Just briefly, the government – the IRS did not do an analysis of the trust accounts. They did not get the checks. They did not get settlement statements. They did not contact insurance companies to find out what was going on in the trust account. The trust accounts, with the exception of the first year, remained the same or decreased. So the government's theory that he was letting his funds accumulate in those is just disproven by the facts. The IRS did not do a complete investigation. They did not order checks of his unless they were $500 or more. They did not contact doctors to see if he owed them money. They did not contact clients and so forth to deal with advances. And for those reasons, Your Honor, all the years, including the 99-year starting figure, are not shown to be established with reasonable certainty because the investigation wasn't complete. They also violated this Court's requirement that the government assume a special responsibility of thoroughness and particularity in the presentation. They showed two computations to the jury, but they did not correct either of those computations with the admitted errors. I've never seen it before in a criminal case like this, in a tax case, where they don't correct the errors that they admit were made. The reason they didn't do it is they did not want to show the jury that second computation, which will show years going from over-reporting to under-reporting to over-reporting to under-reporting, which completely undermines any reasonable belief that that is adequate enough to support a criminal conviction. If the Court has no further questions. Okay. Thank you, Mr. Katz. Thank you, Judge.  Thank you.
judges: Canby, Rymer, Hawkins